Filed 1/21/16  P. v. Klaus CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GARY WILLIAM KLAUS,<br><br>Defendant and Appellant. | F068339<br><br>(Super. Ct. No. BF137080A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Eric J. Bradshaw, Judge.

William W. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Barton Bowers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

In 2011, appellant Gary William Klaus was involved in a vehicular accident in Bakersfield, California. The other driver was seriously injured. Law enforcement arrested appellant on suspicion of driving under the influence of alcohol and a jury subsequently convicted him of causing bodily injury while driving under the influence (Veh. Code, § 23153, subd. (a); count 1), finding true that great bodily injury was inflicted (Pen. Code, § 12022.7), but finding not true that his blood alcohol content was .15 percent or more (Veh. Code, § 23578). The jury found appellant not guilty of driving with a blood alcohol content of .08 percent or greater (Veh. Code, § 23153, subd. (b); count 2), as well as not guilty of the lessor included offense of driving under the influence (Veh. Code, § 23152, subd. (b)). Appellant was sentenced to an aggregate term of four years four months in prison.

On appeal, appellant raises two issues. First, he asserts that the trial court abused its discretion in denying his motion in limine to exclude evidence of certain field sobriety tests (FSTs) law enforcement had him perform following the accident. He maintains that the trial court failed in its "gatekeeping function" to exclude speculative or irrelevant expert opinion as set forth in *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 770 (*Sargon*). He contends the court allowed the officer to testify at trial without sufficient foundational evidence regarding the officer's methodology used to determine intoxication.

Second, following his conviction, appellant filed a motion for new trial, contending juror misconduct occurred. Appellant's counsel sought an evidentiary hearing in conjunction with the motion, which the trial court denied. Appellant argues the trial court abused its discretion in denying his request for the evidentiary hearing.

Appellant's arguments are without merit. We affirm.

2.

## BACKGROUND

### I.     Trial Facts.

#### A.     Prosecution's case.

In May 2011, appellant was involved in a vehicle accident in Bakersfield, California.  The other driver, Vanessa De La Cruz, entered the intersection on a green light where appellant's vehicle struck her vehicle.  Law enforcement and medical personnel responded to the scene.  De La Cruz suffered extensive injuries and was subsequently hospitalized for 26 days.  An officer spoke with appellant at the accident scene while appellant was still in the driver's seat of his vehicle.  Appellant indicated he was okay and he declined medical aid.  The officer noticed a faint odor of alcohol emitting from appellant's breath and person.  Appellant's responses to the officer were slow.

The officer asked appellant if he would exit his vehicle and perform a FST.  Appellant declined because he was not wearing shoes.  As a result, the officer performed a horizontal gaze nystagmus (HGN) eye test while appellant remained in his vehicle.  The officer observed some indicators that appellant was potentially under the influence of alcohol.  Appellant lacked "smooth pursuit" when his eyes followed stimulus, his pupils were unusually constricted given the lighting conditions, and his responses to questions were slow.  The officer observed an empty prescription pill bottle for hydrocodone in appellant's vehicle.  Appellant denied taking any hydrocodone that day.  Later that day, appellant informed another officer he had undergone gastric bypass surgery approximately three weeks before the accident.

A short time after the accident, an officer used a preliminary alcohol screening device (PASD) at the accident scene on appellant, who blew into it.  The PASD registered a .19 percent alcohol content.  Appellant was transported to Kern Medical Center, where his blood sample was taken and later tested.  Appellant's blood sample

3.

showed an alcohol concentration of .16 percent.  No narcotic analgesic was detected in appellant's blood sample.

Appellant was transported to the police station where he underwent additional FSTs.  The officer who conducted these tests detected the smell of alcohol on appellant's breath.  Based on appellant's performance, the officer opined that appellant was under the influence of alcohol along with a narcotic analgesic, and he was too impaired to drive.

**B.     Defense case.**

Three eyewitnesses to the accident testified that they individually spoke with appellant at the accident scene while he was still in his vehicle and before emergency personnel arrived.  These witnesses did not detect an odor of alcohol from appellant, and appellant did not appear intoxicated.

Jim Valentine, a Ph.D. in medicinal chemistry, is a retired professor of pharmacology.  He examined appellant on the morning of his trial testimony.  Valentine determined that appellant suffers from nystagmus (jerky eye movement) in his right eye, which is a rare condition.  Appellant's pupils are also unusually small.  He explained that blood samples taken from individuals could become fermented if not properly preserved or stored.  He expressed concern that a person who was significantly overweight and who had been recently involved in a vehicle accident was a poor candidate for the FSTs.  Valentine testified about the various problems with the FSTs used in this case, noting a person could fail such tests for reasons other than intoxication.

Janine Arvizu, a Ph.D. candidate in chemistry, is a quality-assurance consultant.  She opined that the instrument used to test the blood samples from appellant was not set up to identify or quantify alcohol in a scientifically-valid manner.  She also expressed concern about how appellant's blood sample was collected and stored.  The tube containing appellant's blood sample was under-filled, which could have allowed microorganisms to contaminate it, generating additional alcohol in the sample.  Arvizu also saw no documentation indicating appellant's sample was appropriately refrigerated

4.

between its collection and analysis. She testified that she could not give any reliability to the blood results taken from appellant.

## C. Rebuttal evidence.

Dan DeFraga is a supervising criminalist at the Kern Regional Crime Laboratory. He opined that the testing methods utilized on appellant's blood sample were scientifically valid.

## DISCUSSION

## I. The Trial Court Did Not Abuse Its Discretion In Denying Appellant's Motion In Limine.

Appellant asserts that the trial court erred in denying his motion in limine to exclude evidence of his FSTs.

## A. Background.

Appellant filed pretrial motions in limine, including a request to exclude all evidence regarding his FSTs. He contended the FSTs were inadmissible primarily pursuant to *People v. Kelly* (1976) 17 Cal.3d 24 (*Kelly*), *Frye v. United States* (D.C. Cir. 1923) 293 F. 1013 (*Frye*), and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993) 509 U.S. 579. He argued that the *Kelly* requirements for admissibility and reliability were not met for the FSTs, requiring their exclusion at trial.

A hearing occurred pursuant to Evidence Code section 402. Justin Enns, the officer who conducted appellant's FSTs, testified for the prosecution. Enns received eight hours of training in the police academy on basic investigations involving driving under the influence. Approximately four years later he attended a basic FST course with 24 hours of instruction, and then underwent a 72-hour course of instruction in a drug recognition evaluation school.

Enns concluded his short testimony and appellant's counsel argued foundation was not met. Defense counsel contended it was unknown whether Enns knew how to administer the FSTs in the proper manner, whether they were properly administered, and

5.

whether Enns properly interpreted the FSTs. The court asked for additional information from Enns, who was recalled to the witness stand.

During his continued examination, Enns testified that he performed five FSTs on appellant: (1) the HGN test; (2) the Romberg; (3) the walk-and-turn; (4) the one leg stand; and (5) the finger to nose, conducting the FSTs according to his training. Enns determined that appellant was intoxicated and impaired from both alcohol and other substances based on clues he observed, and based on his training.

On cross-examination, Enns stated he learned the FST techniques from other law enforcement officers and medical doctors at his training courses. Enns admitted that test results of appellant's blood sample showed no evidence of narcotic analgesics, but Enns believed a minute amount may have been in appellant's system that fell below a testable level. Enns based his opinion of a narcotic analgesic in appellant's system from appellant's pinpoint pupils, lethargy, and slow pupil reaction to light. Enns also considered the empty prescription bottle found in appellant's vehicle, and appellant's statement to him that he had undergone bariatric bypass surgery three weeks before the accident. Enns took into consideration appellant's weight, and asked appellant if he could perform the tests. Enns confirmed that his tests were conducted pursuant to the National Highway Traffic Safety Administration guidelines, and he relied upon the California Highway Patrol's drug matrix, which lists the symptomatology associated with certain drugs and which he carried with him.

Following the testimony, defense counsel renewed his objection. The defense conceded it was not seeking a ruling based on *Kelly* or *Frye*, but argued it was impossible to determine if Enns's evaluation was correct, it was not based on any science, and reliability was lacking.

The court ruled that the prosecution could present evidence of appellant's FSTs. The court was "satisfied that the foundational requirement has been made."

## B. Standard of review.

An appellate court reviews for abuse of discretion a trial court's ruling excluding or admitting expert testimony. (*Sargon, supra,* 55 Cal.4th at p. 773.) "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.' [Citation.]" (*Ibid.*)

## C. Analysis.

On appeal, appellant argues the trial court did not exercise its "gatekeeping" role in judging the admissibility of the FSTs when it denied his motion in limine. He contends Enns's methodology was not established during the Evidence Code section 402 hearing. He notes a lack of evidence regarding how and why the FSTs worked, asserting the trial court could not have reasonably determined whether Enns's reliance was reasonable and non-speculative. Appellant asks this court to determine an abuse of discretion occurred under the standard set forth in *Sargon, supra,* 55 Cal.4th 747. He believes the court's abuse was prejudicial, maintaining there is a reasonable probability a more favorable outcome would have resulted had the FSTs been excluded.

As an initial matter, we note appellant's present appeal does not expressly raise a claim for relief pursuant to *Kelly*. We further note that during the Evidence Code section 402 hearing, appellant's counsel conceded he was not seeking a ruling based on *Kelly* or *Frye*. To the extent appellant's present appeal could be construed under *Kelly*/*Frye*, that claim is deemed waived from the court proceedings below. (*Cinnamon Square Shopping Center v. Meadowlark Enterprises* (1994) 24 Cal.App.4th 1837, 1844 [generally, an appellate court will only consider points that were raised in the trial court, which precludes a party from asserting on appeal claims to relief not pursued in the lower court].)

In *Sargon*, a small dental implant company sued the University of Southern California (USC) for breach of a contract that required USC to clinically test a new implant Sargon had patented. Although Sargon only had net profits of $101,000 in 1998,

it sought damages for lost profits ranging from $200 million to over $1 billion beginning in 1998. Following an evidentiary hearing, the trial court excluded as speculative the proffered testimony of an expert regarding Sargon's potential lost profits. (*Sargon, supra,* 55 Cal.4th at p. 753.)

On appeal, *Sargon* analyzed and agreed with various appellate decisions that an expert's opinion cannot be based on speculation or conjecture. (*Sargon, supra,* 55 Cal.4th at p. 770.) Pursuant to Evidence Code section 801, a trial court acts as a gatekeeper and should exclude any expert opinion that is based upon assumptions of fact without evidentiary support, or which involve guesses or surmises. (*Sargon, supra,* at p. 770.) Evidence Code section 802 permits a court to inquire into both the type of material from which an expert relies, and whether that material actually supports the expert's reasoning. (*Sargon, supra,* at p. 771.) In exercising its role as a gatekeeper, the trial court should exclude expert opinion testimony "that is (1) based on matter of a type on which an expert may not reasonably rely, (2) based on reasons unsupported by the material on which the expert relies, or (3) speculative." (*Id.* at pp. 771-772.) The trial court's focus should be "'solely on principles and methodology, not on the conclusions that they generate.' [Citation.]" (*Id.* at p. 772.) In conducting the hearing, a trial court must determine whether the expert's opinion is based on faulty logic or conjecture, or whether the matter relied upon can provide a reasonable basis for the opinion. (*Ibid.*) Scientific controversies need not be resolved, but the court should determine if the expert's information and studies can logically support the expert's general theory or techniques. (*Ibid.*) The trial court's gatekeeping role is to exclude expert opinions which are "'clearly invalid and unreliable.'" (*Ibid.*)

Under its record, *Sargon* determined that the trial court acted appropriately in excluding the expert testimony because the expert's methodology was too speculative. The expert's conclusions regarding lost profits were based on spectacularly increased market shares far above anything Sargon had ever achieved. (*Sargon, supra,* 55 Cal.4th

at p. 776.) The expert's attempt to predict the future was not grounded on past performance and involved too many variables. The calculation of lost profits was not certain. (*Id.* at p. 780.) The lack of sound methodology for determining the future profits meant the trial court reasonably excluded it. (*Id.* at p. 781.)

Here, unlike in *Sargon*, Enns's proposed opinions were not based on future events or contingent on a myriad of unknown future variables. Enns's proposed opinions were not based on calculations that relied upon assumptions of fact. Enns did not attempt to predict the future. To the contrary, Enns performed five standard and specific FSTs based on numerous hours of training. Enns employed techniques which were neither new nor novel. Enns was taught how to conduct FSTs and recognize impairment. Enns's opinions were not based on a leap of logic or conjecture, and the trial court had sufficient minimum information to determine whether Enns's opinions were based on valid information. This record demonstrates that the trial court properly exercised its gatekeeping role.

Once it is established that an expert witness has sufficient knowledge of a particular subject, any questions regarding the amount of knowledge possessed by the expert goes to the weight of the evidence and not its admissibility. (*People v. Jones* (2012) 54 Cal.4th 1, 59.) Here, the trial court heard sufficient evidence regarding Enns's background to determine whether he had sufficient knowledge regarding FSTs to offer expert opinion testimony. Based on Enns's background, his proffered opinions were not based on conjecture. Once it was established that Enns had sufficient knowledge of FSTs, questions about his knowledge were an issue of credibility for the jury to resolve.

The trial court's ruling admitting Enns's testimony was not so irrational or arbitrary that no reasonable person could agree with it. An abuse of discretion does not

appear on this record. Accordingly, appellant's conviction in count 1 will not be reversed.[1]

## II. The Trial Court Did Not Abuse Its Discretion In Denying An Evidentiary Hearing.

Appellant contends the trial court erred when it denied his request for an evidentiary hearing in connection with his motion for new trial.

### A. Background.

In October 2013, appellant filed a motion for a new trial pursuant to Penal Code section 1181. Attached to the motion was a declaration from attorney Emily Watts Blenner, an associate in defense counsel's law firm. Blenner declared that she had personally spoken with one of the jurors in the matter (the Juror) via telephone. According to Blenner's declaration, she read the following pre-prepared question to the Juror:

"'We were told that before the jury delivered its final verdict, the jury was split close to 6 to 6, with 6 jurors voting "guilty" on both counts, driving under the influence and driving with a blood alcohol level of 0.08% or higher, and 6 jurors voting "not guilty" on both of those counts. In order to reach a verdict, some jurors agreed to a compromise. Some jurors changed their votes from "guilty" to "not guilty," and others from "not guilty" to "guilty," in order to reach unanimous verdicts on both counts, without the intent to do anything wrong. Do you recall that situation or something similar happening during your deliberations?'"

The Juror replied, "'Yes, I think so.'" The Juror would not characterize what the jury did as "'trading votes.'" The Juror indicated the jury foreman proposed a compromise after the jurors were arguing, frustrated, and deadlocked. Some jurors believed appellant was not guilty on both counts, but they changed their votes to guilty on

---

[1]    Because the trial court did not abuse its discretion, we will not address appellant's argument that he suffered prejudice.

count 1 in an attempt to compromise as proposed by the foreman. According to the Juror, the foreman was a United States Marshall, who believed appellant was guilty on both counts and said so at the start of deliberations.

The Juror agreed with Blenner that he voted guilty on count 1 due to the compromise suggested by the foreman. The Juror was not sure about signing a declaration and said he wanted to talk about it with his wife. He indicated he had not spoken with the prosecutor but knew the prosecutor wanted to talk with him because the prosecutor had left a message for him. The Juror asked Blenner to contact him the next day regarding his declaration.

The following day, the Juror told Blenner that he would "'stand by'" his vote of guilty on count 1 and he was not willing to sign a declaration about the compromise suggested by the foreman. The Juror said he had spoken with the prosecutor since his conversation with Blenner. The Juror said the prosecutor came to his place of work and the Juror declined to say if he had signed a declaration for the prosecution.

The prosecution opposed the motion for new trial, and filed declarations from four jurors, including the one with whom Blenner had spoken. All of the juror's declarations stated, in relevant part, that "[t]he verdict read by the court clerk at the conclusion of my service accurately reflected my individual belief as to the charges and allegations alleged. [¶] … I obeyed the instructions of the court throughout my service as a juror on the case." All four of the juror declarations were countersigned by a "Witnessing Officer/Investigator."

On October 25, 2013, the trial court heard arguments on the motion for new trial. Appellant's counsel requested the court hold an evidentiary hearing, arguing such a hearing was necessary for two reasons: first, to find out if undue prosecutorial influence occurred; and, second, because there was a conflict in the evidence from the Juror's statements to Blenner as compared to the Juror's declaration. Appellant's counsel argued the prosecution used tactics to intimidate the jurors because the prosecution contacted the

11.

jurors with a law enforcement officer present, and it was not known what the prosecutor said to the jurors before they signed the declarations. Appellant's counsel conceded that Blenner's declaration was not sufficient, by itself, to grant a new trial, but was sufficient for an evidentiary hearing to question the jurors about the factual situation stated in her declaration. Appellant's counsel contended that the foreman was a law enforcement officer who manipulated the jury into voting a particular way, amounting to juror misconduct.

The court noted it had reviewed the pleadings, the motion, the opposition, and it looked very carefully at Blenner's declaration as well as the declarations submitted in opposition. The court did not find sufficient grounds to require an evidentiary hearing. The court denied appellant's motion.

### B. Standard of review.

The trial court's decision whether to conduct an evidentiary hearing on the issue of juror misconduct will not be reversed on appeal unless the defendant can demonstrate an abuse of discretion. (*People v. Dykes* (2009) 46 Cal.4th 731, 810 (*Dykes*).) To establish an abuse of discretion, the defendant must show that the trial court's decision was so "irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

### C. Analysis.

A trial court has broad discretion regarding a motion for new trial. (*Dykes, supra,* 46 Cal.4th at p. 809.) The trial court has discretion to hold an evidentiary hearing to determine the truth of the allegations when a criminal defendant moves for a new trial based on allegations of jury misconduct. (*Ibid.*; *People v. Hedgecock* (1990) 51 Cal.3d 395, 415 (*Hedgecock*).) However, a defendant is not entitled to an evidentiary hearing as a matter of right. Such a hearing should occur only when the trial court concludes one is necessary to resolve material and disputed issues of fact. It is within the trial court's

discretion to make this determination. (*Dykes, supra,* 46 Cal.4th at p. 809; *Hedgecock, supra,* 51 Cal.3d at p. 415.)

An evidentiary hearing should not be used as a "'fishing expedition'" to search for possible misconduct. (*Hedgecock, supra,* 51 Cal.3d at p. 419.) Such a hearing should occur "only when the defense has come forward with evidence demonstrating a strong possibility that prejudicial misconduct has occurred. Even upon such a showing, an evidentiary hearing will generally be unnecessary unless the parties' evidence presents a material conflict that can only be resolved at such a hearing." (*Ibid.*)

Evidence Code section 1150, subdivision (a) permits the receipt of "any otherwise admissible evidence" regarding the statements, conduct, conditions or events when an inquiry is made regarding the validity of a verdict. However, hearsay evidence is normally not sufficient to trigger a trial court's duty to inquire further into claims of juror misconduct. (*People v. Hayes* (1999) 21 Cal.4th 1211, 1256.) A trial court does not abuse its discretion when it denies a motion for new trial when the evidence to establish juror misconduct constitutes unsworn hearsay. (*Dykes, supra,* 46 Cal.4th at p. 810.)

Appellant contends if the information presented by the Juror to Blenner was accurate, it would state grounds for a new trial as it demonstrated misconduct because the jurors changed votes simply for the sake of breaking a deadlock.[2] He asserts an evidentiary hearing was necessary because the circumstances suggested that the Juror was reluctant to sign an affidavit due to the prosecutor's actions. He describes the circumstances as "a colorable claim of prosecutorial interference." He notes the prosecutor approached the Juror at his place of business with a law enforcement officer, which created "potential stigma and embarrassment" and which could "chill" a desire to cooperate further with defense investigations. He maintains that a minimally intrusive

---

[2] Appellant's appeal does not challenge the trial court's denial of his motion for a new trial.

13.

evidentiary hearing was justified given the colorable claim established by the defense. In his reply brief he cites *People v. Hutchinson* (1969) 71 Cal.2d 342 (*Hutchinson*) as authority establishing that Evidence Code section 1150 would not bar evidence regarding the alleged misconduct here. These arguments are without merit.

In *Hutchinson, supra,* 71 Cal.2d 342, the defendant moved for a new trial based on alleged misconduct by the bailiff. (*Id.* at p. 346, fn. 1.) In support of the motion, the defendant submitted an affidavit from a juror stating that the bailiff made implied threats, which rushed the jury into rendering a verdict. The trial court denied the motion and refused to consider the affidavit, determining that jurors could not impeach their own verdict. On appeal, *Hutchinson* held "that jurors are competent witnesses to prove objective facts to impeach a verdict under section 1150 of the Evidence Code." (*Id.* at p. 351.)

In contrast to *Hutchinson*, in *People v. Cox* (1991) 53 Cal.3d 618 (*Cox*) (disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22), the defendant offered to submit both the unsworn statement of a juror and a defense investigator's affidavit recounting the juror's statement to the investigator regarding alleged juror misconduct. Our Supreme Court found no abuse of discretion in the trial court's denial of the new trial motion without a hearing, noting that the court was justified in according little, if any, credence to the assertions the juror would not verify. (*Cox, supra,* at pp. 697-698.) *Cox* declined to permit a defendant to receive an evidentiary hearing based on unsworn statements from jurors because a defendant has no guaranty of posttrial access to jurors nor a right to question them about their verdicts. (*Id.* at pp. 698-699.) "Either a juror is willing to come forward and, at least on a preliminary basis, sign an affidavit or not." (*Id.* at p. 699.) *Cox* noted that unless a juror's reticence resulted from "impermissible interference by the court or prosecutor," the reasons for the juror's reticence was not subject to additional inquiry. (*Ibid.*)

14.

Here, Blenner's declaration contained the Juror's unsworn hearsay statements. Unlike in *Hutchinson, supra,* 71 Cal.2d 342, the trial court was not presented with a juror's affidavit impeaching the verdict. Appellant's reliance on *Hutchinson* is misplaced as that case is distinguishable on its facts. Similar to *Cox, supra,* 53 Cal.3d 618, the court had no duty to conduct an evidentiary hearing based on these hearsay statements and the court was justified in according little, if any, credence to the statements which the Juror would not verify. Moreover, the court received a sworn declaration from the Juror indicating the verdicts reflected his individual beliefs. The trial court was not presented with material and disputed issues of fact. To conduct an evidentiary hearing in this scenario would be tantamount to a "fishing expedition."

Finally, the Juror never expressed a willingness to sign a declaration for the defense. To the contrary, before speaking with the prosecutor, the Juror informed Blenner that he wanted to talk with his wife before he would sign a declaration. This record does not demonstrate that the Juror's reticence stemmed from "impermissible interference" by the prosecutor. Under these circumstances, the court did not abuse its discretion in denying the evidentiary hearing.

## DISPOSITION

The judgment is affirmed.

_____
LEVY, Acting P.J.

WE CONCUR:


_____
KANE, J.


_____
POOCHIGIAN, J.

15.